No. 590 July 1, 2026 13

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of L. J. K.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. K.,
aka C. J.,
*Appellant.*

Hood River County Circuit Court
23JU05791; A189207

John A. Olson, Judge.

Argued and submitted April 22, 2026.

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Paul L. Smith, Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, J.**

Mother appeals from a permanency judgment that changed her child's plan from reunification to guardianship.[1] On appeal, mother specifically challenges the juvenile court's determination under ORS 419B.476(4)(c) that further efforts would not make it possible for her child to safely return to her home within a reasonable time. In arguing this case, the parties disagree as to our standard of review of that issue and who bore the burden of proof below.

With respect to our standard of review, we conclude that the juvenile court's further-efforts determination itself is a fact-driven legal conclusion, and, as such, we review it for legal error "by examining whether the facts explicitly and implicitly found by the juvenile court, together with all inferences reasonably drawn from those facts, were legally sufficient to support the juvenile court's determination." *Dept. of Human Services v. Y. B.*, 372 Or 133, 151, 546 P3d 255 (2024). We decline to address the burden of proof, because it is not necessary to our decision. Applying our standard of review in this case, we conclude that the juvenile court did not err and affirm.

## I.   ORS 419B.476

A.   *Statutory Overview*

We start with an overview of the statute at issue here. As explained in *Y. B.*, "[t]he purpose of a permanency hearing is to determine, or update, the permanency plan for the child and to establish the timetable and conditions for accomplishing the plan." 372 Or at 145. A juvenile court conducts a permanency hearing pursuant to ORS 419B.476. When the case plan at the time of the hearing is reunification, the court is required to "determine whether [ODHS] has made reasonable efforts *** to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home." ORS 419B.476(2)(a). In making those determinations, "the court shall consider the ward's health and safety the paramount concerns." ORS 419B.476(2)(a). "Thus,

---

[1] Father is not a party to this appeal.

at a permanency hearing, the juvenile court reviews both [O]DHS's efforts to provide services to the parent and the parent's progress in ameliorating the conditions that led to the child becoming a ward of the court to determine whether the child's safe return home is possible at the time of the hearing." *Y. B.*, 372 Or at 145. If the court determines that ODHS has made reasonable efforts and the parent has not made sufficient progress, "the court may determine that the permanency plan for the child should be something other than reunification, such as adoption, guardianship, or placement with a relative." *Id*. (citing ORS 419B.476(5)(b)(B) - (D)).

In addition, ORS 419B.476(4) sets out that the court "may" take certain actions at a permanency hearing. As relevant here, ORS 419B.476(4)(c) provides that, "[a]t a permanency hearing the court may *** [i]f the court determines that further efforts will make it possible for the ward to safely return home within a reasonable time, order that the parents participate in specific services for a specific period of time and make sufficient progress within that period of time[.]" Relatedly, ORS 419B.476(5)(c), provides that, "[i]f the court determines that the permanency plan for the ward should be to return home because further efforts will make it possible for the ward to safely return home within a reasonable time," the court's order shall include "the court's determination of the services in which the parents are required to participate, the progress the parents are required to make and the period of time within which the specified progress must be made." Thus, "[a]fter the court has determined that ODHS has made reasonable efforts and a parent has not made sufficient progress to safely return home at the time of the hearing, ORS 419B.476(4)(c) gives the parent the opportunity to argue, and for the court to consider, continuing the reunification plan in some circumstances." *Dept. of Human Services v. M. N. B.*, 346 Or App 440, 450, 585 P3d 622, *modified on recons*, 348 Or App 146, 588 P3d 302 (2026).

Finally, ORS 419B.476(5)(e) provides that, if the court changes the ward's plan to legal guardianship, then the court's order shall include "the court's determination of why neither placement with parents nor adoption is appropriate."

B.   *Standard of Review on Appeal*

It is well-settled that both the reasonable-efforts and sufficient-progress determinations under ORS 419B.476 (2)(a) are legal conclusions that we review for errors of law. *Dept. of Human Services v. C. H.*, 373 Or 26, 48-49, 559 P3d 395 (2024) (reasonable efforts); *Y. B.*, 372 Or at 149 (sufficient progress). Those determinations are heavily fact-driven, and, as a result, although we review those determinations for errors of law, we do that "by examining whether the facts explicitly and implicitly found by the juvenile court, together with all inferences reasonably drawn from those facts, were legally sufficient to support the juvenile court's determination." *Id.* at 151; *see also C. H.*, 373 Or at 48-49. It is also well-settled that "[O]DHS bears the burden of proof at a permanency hearing, and it must prove the facts supporting a change to the permanency plan by a preponderance of the evidence." *Y. B.*, 372 Or at 135-36; *see also C. H.*, 373 Or at 46.

What is not well-settled is the standard of review or burden of proof that applies to the additional further-efforts determination that a juvenile court may make under ORS 419B.476(4)(c). We turn to that question.

We begin with the text of ORS 419B.476(4)(c), which informs our review standard. As noted above, ORS 419B.476(4) sets out several actions that a court "may" take at a permanency hearing. One of those actions is under ORS 419B.476(4)(c), which provides:

"(4)   At a permanency hearing the court may:

"* * * * *

"(c)   If the court determines that further efforts will make it possible for the ward to safely return home within a reasonable time, order that the parents participate in specific services for a specific period of time and make specific progress within that period of time[.]"

Given the structure of the statute, the word "may" in that provision relates to what the juvenile court may order at the permanency hearing: "At a permanency hearing the court may * * * order that the parents participate in specific services for a specific period of time and make specific progress

within that period of time." The phrase, "If the court determines that further efforts will make it possible for the ward to safely return home within a reasonable time," sets out what the court must determine before making a discretionary order under ORS 419B.476(4)(c). *See Dept. of Human Services v. D. L. H.*, 251 Or App 787, 805-06, 284 P3d 1233, *disposition modified on recons*, 253 Or App 600, 292 P3d 565 (2012) (stating that "it is within the juvenile court's discretion whether to order a parent to participate in services, if the court concludes that the parent can be reunified with the child within a reasonable time and with the aid of the additional services"). In pointing that out, we wish to make clear that we are not revisiting *D. L. H.* or addressing whether a juvenile court is ever required to make a further-efforts determination, or if the decision to make a further-efforts determination is always discretionary as suggested by *D. L. H.*, because, in this case, the juvenile court did decide to make a further-efforts determination. *Accord Dept. of Human Services v. B. L. G.*, 301 Or App 314, 315-16, 456 P3d 377 (2019) (declining to address that issue where the court did make a determination that reasonable efforts would not make it possible for the child to safely return home to father in a reasonable time). What we must decide here is our standard of review of that further-efforts determination itself.

We first reject ODHS's assertion that the word "may" in the introductory clause of ORS 419B.476(4) means that we review a court's further-efforts determination itself for an abuse of discretion. In support of that contention, ODHS cites *Y. B.* and *M. N. B.* First, we do not read *Y. B.* as establishing an abuse of discretion standard of review for a court's determination that further efforts will not make it possible for the ward to safely return home within a reasonable time. That issue was not before the court in *Y. B.* Instead, the court stated as part of a statutory overview that "ORS 419B.476(4)(c) gives the juvenile court *discretion to continue the current plan of reunification* if it determines that further efforts may make possible the child's safe return 'within a reasonable time' ***." 372 Or at 145-46 (emphasis added). That statement says nothing about our standard of review of such a further-efforts determination itself.

However, in *M. N. B.*, we stated: "[T]he juvenile court determined that further efforts would not make it possible for [the child] to return home within a reasonable time. That determination is evaluated for abuse of discretion." 346 Or App at 451. We supported that statement with a cite to the use of "may" in ORS 419B.476(4)(c) and to *Y. B.* However, as explained above, neither of those sources of law support the contention that the further-efforts determination itself—as opposed to a discretionary decision of the juvenile court to reach the issue under ORS 419.476(4)(c) at a permanency hearing—should be reviewed for an abuse of discretion. *M. N. B.* does not further address why we should review a juvenile court's further-efforts determination for an abuse of discretion, and we are not aware of any prior cases of ours that treated the determination as one that is reviewed for an abuse of discretion. *See, e.g., Dept. of Human Services v. D. I. R.*, 285 Or App 60, 70-71, 395 P3d 970 (2017) (reviewing a determination that further efforts would not make it possible to reunify the child and parent in a reasonable time under both ORS 419B.498(2)(b)(A) and ORS 419B.476(4)(c), and stating that "[o]ur task is to determine whether the evidence in the record is sufficient to support the court's findings that [the child] could not be safely returned to mother's or father's care in a reasonable time"); *D. L. H.*, 251 Or App at 806 (reviewing a determination under ORS 419B.467(4)(c) that further efforts would not make it possible to reunify the child and parent in a reasonable time in a manner consistent with sufficiency of the evidence to support the court's conclusion). In addition, reading *M. N. B.* as a whole, it appears that the analysis was focused on whether the juvenile court abused its discretion in failing to order services under ORS 419B.476(4)(c)—a slightly different question than the one we seek to address here, although the posture of the cases are similar.

Given those observations, we clarify now that, when a juvenile court has made a determination that further efforts will not make it possible for a ward to safely return home within a reasonable time, we review that determination for legal error. As explained below, we reach that conclusion based on the text and context of ORS 419B.476 (4)(c) and the Supreme Court's reasoning in *Y. B.* Finally, to

avert future confusion, we disavow our articulation of the standard of review in *M. N. B.* to the extent that it suggests a blanket "abuse of discretion" standard of review that applies to a juvenile court's ruling under ORS 419B.476 (4)(c).[2] Rather, the statute plainly requires the application of different standards of review for different components of the court's ruling: The discretionary decision to order further services upon a determination that "further efforts" will make reunification possible—which we understand to be the primary focus of *M. L. B.*—is reviewed for abuse of discretion; the predicate "further efforts" decision, on the other hand, is one that we review for legal error.

We turn to the nature of the further-efforts determination. As explained below, based on *Y. B.*, we conclude that the determination in ORS 419B.476(4)(c) is a legal conclusion. In *Y. B.*, the court concluded that "sufficient progress" in ORS 419B.476(2)(c) "does not mean completely ameliorating the bases for dependency jurisdiction." *Y. B.*, 372 Or at 146. The court explained that

> "a parent can be found to have made sufficient progress to warrant denial of a[n O]DHS request to change the permanency plan away from reunification *even if further services would be required* were the child to be returned home, *and even if the child will remain in the legal custody of [O]DHS* and subject to the juvenile court's ongoing supervision."

*Id.* at 146-47 (emphases added).

Based on the Supreme Court's conclusion as to what the sufficient-progress determination encompasses, we do not understand what additional or different determinations a court would make to determine if "further efforts will make it possible for the ward to safely return home within a reasonable time," except with respect to what "a reasonable time" is. And, "reasonable time" is a statutorily defined term that the Supreme Court has treated as a legal conclusion when made part of a determination that is otherwise a legal

---

[2] Because this opinion overrules our existing precedent, the panel specifically advised all members of the court of the effect of its decision, but neither the Chief Judge nor a majority of the regularly elected or appointed judges referred the cause, under ORS 2.570(5), to be considered en banc.

conclusion.[3] *See, e.g.*, *Dept. of Human Services v. S. J. M.*, 364 Or 37, 56, 430 P3d 1021 (2018) ("Whether a 'compelling reason' [under ORS 419B.498(2)(b)] exists is a legal question, but one dependent upon factual findings."); ORS 419B.498 (2)(b)(A) (providing that compelling reasons include, "The parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476 (5)(c).").

Moreover, ORS 419B.476(4)(c) refers to further efforts as something the court "determines." Likewise, in ORS 419B.476(2)(a), the legislature used the word "determine" with respect to reasonable efforts and sufficient progress, which the Supreme Court relied on, in part, in concluding that those questions were legal ones. "Although, in the abstract, there is nothing that precludes the legislature from defining the same terms to mean different things in the same or related statutes, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently." *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011). That holds particularly true here where the determinations to be made are so closely related.

Based on the above discussion, we do not think the legislature intended a further-efforts determination in ORS 419B.476(4)(c) to be an inquiry different in nature from the determinations in ORS 419B.476(2)(a). We thus conclude that a court's determination whether "further efforts will make it possible for the ward to safely return home within a reasonable time" is a heavily fact-driven legal conclusion that we review in the same manner as a sufficient-progress determination. As summed up in *Y. B.* and as applied here, that entire standard is as follows:

"[A]ppellate courts are bound by the juvenile court's factual findings *** so long as there is any evidence in the record to support them, and we assume that the juvenile court found all facts necessary to its ruling, even if it did not do so explicitly. But the juvenile court's determination

---

[3] "Reasonable time," is defined as "a period of time that is reasonable given a child or ward's emotional and developmental needs and ability to form and maintain lasting attachments." ORS 419A.004(27).

> [whether further efforts will make it possible for the ward to safely return home within a reasonable time] is a legal conclusion that appellate courts review for errors of law, and they do that by examining whether the facts explicitly and implicitly found by the juvenile court, together with all inferences reasonably drawn from those facts, were legally sufficient to support the juvenile court's determination."

*Y. B.*, 371 Or at 151.

Finally, we decline to decide which party bears the burden of proof at a permanency hearing on a further-efforts determination, because it is not necessary to decide this case.

## II.   APPLICATION TO THIS CASE

### A.   *Factual Background*

Mother does not ask us to take *de novo* review, and we decline to do so. ORAP 5.40(8). Accordingly, "we consider the evidence in the light most favorable to the juvenile court's disposition to determine whether it supports that court's legal conclusions." *Y. B.*, 372 Or at 136. "In addition, we defer to the juvenile court's findings of fact if there is any evidence in the record to support them." *Id*. We summarize the facts most important to our analysis in accordance with that standard.

Mother's child, L, was 9 years old at the time of the permanency hearing. She was removed from mother's home in November 2023, when she was 7 years old. When ODHS went to mother's home at that time, it was extremely unsanitary, including a kitchen floor covered in animal feces and urine, trash throughout the home and yard, and stacks of dirty dishes. The caseworker who contacted L at her school reported that L smelled strongly of dog feces. At first, L stayed with her maternal grandfather while mother cleaned the home. Because mother made significant progress, L returned to mother's home. However, around the time of L's return, mother tested positive for methamphetamine, and about a week later, ODHS discovered that the condition of mother's home was deteriorating. L also tested positive for methamphetamine. Mother denied methamphetamine use and blamed L's positive test on father or friends who were

helping her clean. ODHS removed L from mother's care and, after a failed kith and kin placement, she was placed with nonrelative resource parents.

The juvenile court asserted jurisdiction over L in February 2024. Mother admitted to allegations that she "has not maintained a safe and sanitary home environment which places the child at risk of harm," her "mental health problems interfere with her ability to safely parent the child," and her "substance abuse interferes with her ability to safely parent the child."

After the court took jurisdiction, mother completed an online parenting class. She also initially engaged in out-patient group and individual drug and mental health counseling, but was discharged in June 2024 because she was not receptive to treatment. She restarted services with a different provider, but was discharged in December 2024 after failing to show up to scheduled appointments and failing to make progress. Mother tested positive for methamphetamine several times in 2024, although she would not admit to using. She again tested positive in January 2025, and, in a face-to-face meeting in February 2025, mother admitted to her January relapse but said she was committed to her sobriety.

In early 2025, mother began engaging with online service providers for sobriety support and mental health services, and she was managing her mental health with medication and therapy. Mother did not agree that she needed the in-person services recommended for her. She maintains that her clean and sober date is February 5, 2025; however, she refused to answer the door in April for a random drug test, and she tested positive for methamphetamine by mouth swab in May and June 2025. Mother offered that it was her medications that were causing a positive result in the mouth swabs, but her doctor stated that it was not possible for mother's medications to trigger a positive swab for methamphetamine. To rule out that possibility, ODHS offered mother drug screening by urinalysis in July, August, and twice in September 2025, before the permanency hearing, but she did not appear for those screenings, claiming she had work conflicts. Her caseworker, however, testified that

mother's work schedule has not interfered with any other services or visitation. Mother testified that going forward she would work with her employer to get the drug testing done.

Mother has consistently participated in supervised visits with L, first at ODHS offices and then in the community, and through scheduled phone calls. Reportedly, those visits go very well and are positive for L. Mother also made progress on maintaining a clean home, including replacing the urine-damaged flooring.

L has been doing well in her resource home. When she was first removed from mother's care, she required extensive dental work and medical intervention to correct her walk. She still struggles with significant overeating and hygiene issues, particularly around toileting, on a daily basis, which are likely related to the neglect and food insecurity she experienced in mother's home, and she continues to need counseling and physical therapy. L's psychological examiner opined that L needed a stable, safe, and reliable home and "permanent placement decisions as soon as possible" as timelines and return plans "can be very stressful for her."

In September 2025, ODHS sought to change L's plan from reunification to guardianship. ODHS determined that adoption was not an appropriate plan because of L's attachment to mother. Mother contested the change in plan and sought a finding that further efforts would allow L to return safely home to mother within a reasonable time. L's caseworker testified that changing L's plan to guardianship was in L's best interest because after 22 months in substitute care father had not made progress and mother's progress was slow. L was expressing anxiety around where she was going to be living and expressed that, if she could not go back to her mom, she wanted to stay where she was.

After a hearing, the court changed L's plan from reunification to guardianship, with a preference for permanent guardianship. The court determined that reunification was no longer the most appropriate plan for L because she had been in substitute care for 22 months and needs

permanency that a reunification plan cannot provide her, and that adoption was not an appropriate plan due to L's strong attachment to mother. The court also determined that ODHS made reasonable efforts toward reunification and that mother had not made sufficient progress. The court found that mother had made significant progress on maintaining a safe and sanitary home and continues to make improvements, and that mother has made progress with her mental health and gaining insight. However, given mother's history of falsely denying drug use and missing five drug tests after testing positive, the court found, by a preponderance of the evidence, that mother has continued to use methamphetamine. The court also found that L has higher needs than other children her age because of the severe neglect she experienced while in mother's care, due to mother's mental health struggles and drug abuse. In the judgment, the court stated that "the evidence does not support a determination under ORS 419B.476(4)(c) and (5)(c) that further efforts will make it possible for the child to safely return home within a reasonable time."

B.  *The Juvenile Court Did Not Err.*

Mother does not dispute that the evidence in the record was legally sufficient to permit the juvenile court to determine that ODHS had made reasonable efforts and that mother had not made sufficient progress. She argues only that the court erred in determining that further efforts would not make it possible for L to safely return home within a reasonable time. As we have explained, we review that determination "by examining whether the facts explicitly and implicitly found by the juvenile court, together with all inferences reasonably drawn from those facts, were legally sufficient to support the juvenile court's determination." *Y. B.*, 371 Or at 151.

Mother argues that, at the time of the permanency hearing, she was maintaining a clean home and actively managing her mental health with counseling and medication. She also maintained that she had a clean date of February 5, 2025, and that the only thing that suggested otherwise was the two positive mouth swabs. Mother testified that she would work with her employer so that she

could show up for urinalysis testing, which she had missed because of work. Mother argues that the evidence demonstrated that further efforts would allow L's return home in a reasonable time, because all that was needed was for mother to show up for the urinalysis testing. Mother also argues that ODHS admitted at the hearing that it had not yet found L a prospective guardian and thus L would be in limbo whether or not the plan was changed immediately.

We reject mother's argument primarily because it ignores the juvenile court's finding of fact that mother was, at the time of the hearing, continuing to use methamphetamine. That finding is supported by the evidence, which included mother's history of falsely denying methamphetamine use, testing positive for methamphetamine use in May and June 2025, and missing at least four opportunities for urinalysis testing before the hearing. That factual finding, in addition to the court's findings about L's higher needs from mother's neglect, that mother's drug abuse affects her ability to safely parent L, and L's immediate need for permanency are supported by the evidence and are legally sufficient to support the juvenile court's determination that further efforts will not make it possible for L to safely return home within a reasonable time.

Affirmed.